UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DALE B. S.,

         Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

CASE NO. 3:22-CV-5488-DWC

ORDER AFFIRMING DEFENDANT'S DECISION DENYING BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of his application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before the undersigned. After considering the record, the Court finds no reversable error.

**I. BACKGROUND**

Plaintiff filed a claim for Supplemental Security Income on October 2, 2019, alleging a disability onset date of October 1, 2019. Administrative Record (AR) 217. His applications were denied initially and on reconsideration. AR 37. Plaintiff requested an administrative hearing,

which was conducted by an ALJ in April 2021, wherein Plaintiff appeared telephonically, represented by an attorney. AR 59-81. On June 2, 2021 the ALJ issued a decision finding Plaintiff not disabled, and on May 5, 2022 the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 34, 1; 20 C.F.R. §§ 404.981, 416.1481.

## II. STANDARD

Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

## III. THE ALJ'S FINDINGS

The ALJ found Plaintiff has the following severe impairments: degenerative joint disease (DJD)/degenerative disc disease (DDD) of the lumbar spine; obesity; disorder of skin (infected bursitis of the right elbow); posttraumatic stress disorder (PTSD); depressive disorder; and, bipolar affective disorder. AR 39; 20 CFR 404.920(c).

The ALJ determined that Plaintiff's residual functional capacity (RFC) enables him to perform light work as defined in 20 CFR 404.967(b), involving simple, routine tasks that require only occasional interaction with coworkers and no direct communication with the general public. AR 44; 20 C.F.R. §§ 416.920(e), 416.945. In addition, the ALJ determined Plaintiff's RFC limits him to work involving no more than frequent climbing of ramps and stairs; no more than occasional climbing of ladders ropes or scaffolds; no more than frequent stooping, kneeling, crouching and crawling; no more than frequent handling and fingering; no concentrated exposure to extreme cold and excess vibration; no exposure to unprotected heights or dangerous machinery; and no commercial driving. *Id*. Finally, the ALJ determined that Plaintiff could not perform work involving more than a few workplace changes, and no fast-paced production quotas. *Id*.

At step five of the sequential evaluation the ALJ concluded that a person of Plaintiff's age, with his education, work experience, and RFC, remained capable of performing jobs that exist in significant numbers in the national economy such as Marker, Checker, and Garment Sorter. AR 53; 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## IV. DISCUSSION

Plaintiff claims the ALJ failed to provide legally sufficient reasons to discount his subjective symptom reporting, failed to properly evaluate the medical evidence, and ignored a lay witness statement. *See generally*, Dkt. 13.

**A. The ALJ provided clear and convincing reasons to discount Plaintiff's subjective reporting.**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject some of his subjective symptom complaints. Dkt. 13 at 11.

1. **The ALJ's Subject Reporting Findings**

The ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence" including his "daily activities" and his "history of treatment." AR 45, 49.

As discussed in more detail, below, the ALJ found the medical records indicated conservative treatment for Plaintiff's physical conditions despite Plaintiff's reportedly debilitating pain. AR 49. The ALJ observed that Plaintiff claimed moving around all day caused his "back [to] lock up that night", for which he takes 800 mg Ibuprofen prescribed by a pain specialist. *Id*. Yet, the ALJ found Plaintiff did not pursue recommended physical therapy, declined injection therapy, and did not seek any alternative treatment modalities such as aqua therapy, acupuncture, massage therapy, chiropractic treatment, surgery, or even a TENS unit. AR 49.

Regarding his mental impairments, the ALJ observed that Plaintiff claimed his new mental health provider "changed his diagnoses, despite only speaking to him over the phone, as she thinks [Plaintiff] has only PTSD and not bipolar disorder". *Id*. The ALJ noted that Plaintiff claimed he was not comfortable around people due to PTSD and anxiety, and that he secludes himself up to six times per month. *Id*. The ALJ found that Plaintiff only sought "limited and sporadic" treatment, and even when he was not taking psychotropic medication he exhibited "mild to moderate psychiatric abnormalities at most" and did not require "emergency treatment or psychiatric hospitalization at any time". AR 49-50.

Finally, regarding Plaintiff's daily activities, the ALJ stated:

> The claimant testified he lives with his disabled mother, and he reported some isolative behavior and difficulty getting out of bed (Hearing Testimony). The claimant does not drive due to lack of a license and vehicle, and he has reported limited hobbies and social activities (Exhibit C5E, C9E, C4E). However, the claimant is able to **independently care for his personal hygiene, help care for a**

**pet dog, cook, perform household chores, like cleaning, dishes, home repairs, and taking out the trash, shop in stores and by mail, handle money, socialize with friends and family over the telephone, spend time in person with family members, get the mail, attend appointments, and attend church services and activities** (Id.). In December 2019, the claimant reported walking his dog, making salsa, and **selling some salsa to people that order it from him by telephone** (Exhibit C4F/5). In sum, the claimant's rather extensive, largely intact activities of daily living confirms the claimant is not as limited, either physically or mentally, as he has alleged.

AR 49 (emphasis added).

2. Legal Standard

When assessing the reliability of a claimant's disability allegations, an ALJ considers the extent to which such allegations are consistent with the objective evidence and other evidence in the record. 20 C.F.R. § 416.929(c). Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

3. Analysis of Plaintiff's Arguments

a. Conservative Treatment

Regarding the ALJ's finding that Plaintiff's treatment was "conservative", Plaintiff contends the ALJ overlooked the fact that he did, in fact, attempt aquatic therapy (AR 362) and physical therapy (AR 379, 436) but they made his pain worse so he stopped. Dkt. 13 at 12. He

also claims to have tried trigger point injections but they were unsuccessful at alleviating his symptoms. *Id*. (citing 330)

The Commissioner concedes the record reflects attempts at aquatic therapy and injections, but contends the ALJ was correct to find Plaintiff did not pursue other treatment modalities such as acupuncture, massage therapy, surgery, or use of a TENS unit. Dkt. 19 at 6.

An ALJ may consider "evidence of 'conservative treatment'" in assessing a claimant's subjective symptom testimony. *Parra v. Astrue*, 481 F.3d 742, 750-751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Conservative treatment can be "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Id*. Further, an ALJ may discount a claimant's testimony when the claimant's subjective complaints of pain are inconsistent with the level of treatment received. *See*, *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). Nevertheless, an ALJ cannot draw adverse credibility inferences based on failure to seek medical treatment without first considering Plaintiff's reasons for not doing so. SSR 96–7p, 1996 WL 374186, at *3 (July 2, 1996); *see also*, *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). A Plaintiff's failure to assert a reason for not following a recommended course of treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the Plaintiff's pain testimony. *Id*.

For context, the Court begins by noting that regarding Plaintiff's physical health, the ALJ deferred to the opinion of Plaintiff's primary care provider, Tatiana Antoci, M.D. (Antoci), who opined that Plaintiff was limited to light work with moderate limitations and no heavy lifting or

heights—a finding Plaintiff does not challenge. AR 49-51(citing 509-584, 591-615, 627-634, 639-654).

Nevertheless, the record does reflect that the ALJ wrongly concluded Plaintiff did not pursue physical therapy as he did attend physical therapy for a short time until his health insurance carrier would authorize an MRI, at which point he quit. AR 330, 334, 336. The treatment note Plaintiff relies upon to prove physical therapy made his pain worse indicates he self-reported as much to his primary care provider on December 12, 2018, who found Plaintiff presented as "drug seeking" and "demanding" opioids, which the ER had already refused him. AR 436. In any event, the Court concurs with Plaintiff that the ALJ incorrectly stated that he failed to pursue physical therapy.

Next, the treatment note Plaintiff points to as evidence trigger point injections were unsuccessful indicates Plaintiff self-reported "that he has had numerous injections without success and he is a bit concerned about getting these … given the fact [they] may only last for a short duration of time". AR 330. Plaintiff does not point that Court to any objective evidence of trigger point injection therapy. Still, in finding that Plaintiff "specifically indicated he does not want to undergo epidural steroid injections" when suggested to him by a doctor, the ALJ failed also account for Plaintiff's reason, which is that he claimed they did not work in the past and/or did not provide long-lasting relief. AR 49. Nevertheless, the Court finds the ALJ's determination that Plaintiff's refusal to undergo injections was a clear and convincing reason to discount his pain testimony because duration of relief offered by any given treatment modality is not an acceptable reason for failure to follow prescribed treatment. *See*, 20 C.F.R. § 404.930(c)(listing acceptable reasons for failure to follow prescribed treatment).

Plaintiff next claims the ALJ wrongly held against him the fact he does not use an assistive device to walk, even though Plaintiff never claimed he used such a device and he was never prescribed such a device. Dkt. 13 at 12 (citing AR 49). In assessing whether Plaintiff suffered from an impairment or combination of impairments that met or equaled listed impairment 1.6 the ALJ stated that one of the reasons Plaintiff did not meet this listing was that he did not require use of an ambulatory assistive device. AR 41; 20 CFR §§ 416.920(d), 416.925 and 416.926. Thus, the Court does not concur with Plaintiff that the ALJ used this finding "against him" or to discredit Plaintiff's subjective symptom reporting, but instead finds that the ALJ properly considered it in conducting his listed impairment assessment.

Finally, Plaintiff insists the ALJ's finding that objective mental health evidence was "insufficiently severe" was erroneous for the same reasons Plaintiff insists the ALJ wrongly rejected the opinion of Davie T. Morgan, Ph.D. (Morgan), discussed in the next section, and also because Plaintiff was treated with psychotropic medications during the relevant period. Dkt. 13 at 13 (citing AR 48-50, 471, 474, 490). The ALJ did not call Plaintiff's mental impairments "insufficiently severe" but instead concluded that Plaintiff sought "limited and sporadic" treatment, and even when he was not taking psychotropic medication he exhibited "mild to moderate psychiatric abnormalities at most" and did not require "emergency treatment or psychiatric hospitalization at any time". AR 49-50. Since the Court finds, below, that the ALJ provided legally sufficient reasons for discrediting Morgan's opinion, Plaintiff's "limited and sporadic" mental healthcare record was a clear and convincing reason for the ALJ to discredit Plaintiff's testimony.

    b. *Activities of Daily Living*

Finally, Plaintiff argues the ALJ erroneously concluded that his activities of daily living were "rather extensive" and "largely intact", noting Plaintiff was able to perform personal care,

shop, speak with friends or family over the phone, see family in person, do some chores, and go to church. Dkt. 13 at 14-15 (citing AR 49). Plaintiff insists these activities do not contradict his allegations or demonstrate that he can "work full-time, particularly when he also does not get out of bed some days and has limited hobbies and social activities", requires help with his dog, gets so upset his girlfriend does not want to be around him, has difficulty getting along with others, including authority figures, does not handle stress well, has a "short fuse", cannot sit or stand for long without difficulty, and performs no more than 30 minutes of chores. Dkt. 13 at 14-15 (citing 247, 250, 251, 252, 254, 255, 258, 259, 260, 285, 286, 289, 290).

Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See*, *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)(citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits)). However, "[i]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *See*, *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir.1999).

Here, the ALJ concluded that Plaintiff's "rather extensive, largely intact activities of daily living confirms [he] is not as limited, either physically or mentally, as he has alleged." AR 49. However, the ALJ failed to explain how any of Plaintiff's activities involve the performance of functions transferable to a work setting. Accordingly the Court finds the ALJ did not provide clear and convincing reasons to conclude Plaintiff's activities of daily living detracted from his credibility.

### c. Harmless Error

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

Here, although the ALJ cited two improper reasons for discounting Plaintiff's testimony—failure to do physical therapy, and inconsistent activities of daily living—this error was harmless as the ALJ provided several other clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective symptom testimony, though only one was required. *See*, *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)(striking down one or more justifications for discrediting a claimant's testimony amounted to a harmless error where the ALJ presented other reasons for discrediting the testimony that were supported by substantial evidence in the record); *see also*, *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008)(ALJ's determination that plaintiff was less than fully credible was valid, despite errors, where other reasons given were valid and based on substantial evidence).

In conclusion, the Court finds the ALJ provided clear and convincing reasons to partially discredit Plaintiff's subjective symptom testimony.

**B.  The ALJ properly evaluated the objective medical evidence.**

    1.  The ALJ's Medical Findings

The ALJ observed that at the time of the hearing Plaintiff had recently moved-in with his disabled mother and was reportedly "a little worse" since his last disability application, which was pending appeal, due to an increase in muscle spasms. AR 45. The ALJ noted Plaintiff's history of low back pain and degenerative joint disease of the lumbar spine. *Id*. The ALJ found numerous imaging studies during the relevant period revealed: mild degenerative disc space changes at L1-2, with disc spaces otherwise well preserved, and no fracture of subluxation; mild broad-based posterior disc bulging at L1-2, with anterior spondylosis, but no central canal stenosis or foraminal stenosis; facet joint arthrosis and mildly short pedicles causing mild central canal narrowing at L4-5, though no significant foraminal stenosis and unremarkable findings at the L2-3, L3-4, and L5-S1 levels. *Id*.

The ALJ found treatment notes from the relevant period contained complaints of low back pain radiating to the right lower extremity, joint pain, stiffness, and spasm (especially in the lumbar spine and knees), right elbow wound/infection, hemorrhoids, depression, and temper issues. AR 45-46. Examinations during this period revealed lumbar paraspinal tenderness, decreased lumbar range of motion, and tenderness over the right sacroiliac (SI) joint. *Id*. Examinations also revealed mild obesity (with a BMI ranging from 32 to 33), elevated blood pressure, an anxious, worried appearance, stiffness, infected bursitis of the right elbow with purulent discharge, tenderness, edema, erythema and fluctuation, and a slow gait. AR 46. The AJL noted other examinations which found Plaintiff to be in no acute distress with normal heart, lungs, abdomen, extremities, musculature, and gait, deep tendon reflexes, no focal neurological deficits, appropriate affect, intact memory, judgment, and insight, normal heart, lungs, and

1  abdomen, no musculoskeletal deformities, normal deep tendon reflexes (DTR), and no focal
2  neurological deficits. AR 45-46.
3      Diagnoses during the relevant period included chronic low back pain, lumbago with
4  sciatica on the right side, and myalgia. *Id*. Treatment included Diclofenac Sodium 75 mg and
5  Trazodone 50 mg, discontinue Cyclobenzaprine and Gabapentin, and apply ice and heat. *Id*. The
6  ALJ also noted that Plaintiff declined epidural steroid injections, and that his doctors encouraged
7  him to engage in physical therapy. AR 46.
8      The ALJ credited the opinion of Plaintiff's primary care provider, Tatiana Antoci, M.D.
9  (Antoci), who completed a December 10, 2019 functional capacity evaluation opining that
10 Plaintiff was limited to light work with moderate limitations and no heavy lifting or heights. AR
11 49; 587-590. The ALJ reasoned that Antoci's opinion was adequately supported by her own
12 treatment notes and consistent with the remaining evidence of record. AR 49-51 (citing 509-584,
13 591-615, 627-634, 639-654). The ALJ found that Antoci had diagnosed Plaintiff with
14 degenerative joint disease, benign essential hypertension, PTSD, bipolar affective disorder,
15 depression, bronchitis, and infected bursitis of the right elbow. AR 46. The ALJ noted that
16 Antoci recommended use of non-steroidal anti-inflammatories as needed, discussed the need for
17 exercise and physical therapy, and ordered Plaintiff to follow-up with Psychiatry. *Id*. Plaintiff
18 does not object to the ALJ's treatment of Antoci's opinion.
19     The ALJ found mental healthcare records containing complaints by Plaintiff of PTSD,
20 sadness, depression, anxiety, mood swings, temper issues, stress, anxiety attacks, intrusive
21 memories, nightmares, difficulty being around others, impaired focus, and feeling always on
22 guard. AR 47. The ALJ further noted these records reflected Plaintiff's self-reported history of
23 childhood abuse and imprisonment for 18 years due to conviction for a sex crime, during which
24

he witnessed prisoners being beaten and killed. *Id*. Mental status examinations by these providers revealed Plaintiff exhibited an anxious mood; occasionally decreased attention, concentration, and memory; and impaired fund of knowledge. *Id*. Nevertheless, the ALJ also noted Plaintiff presented as cooperative, engaged, alert, oriented; appropriately dressed; with normal speech and thoughts, perception and abstraction within normal limits; a normal affect; intact insight and judgment; and no suicidal ideation or psychosis. *Id*. Diagnoses during the relevant period included depression, PTSD, and bipolar affective disorder. *Id*. Prescriptions included Paxil 20 mg and Trazodone 50 mg. *Id*.

The ALJ noted that during a February 25, 2021 telehealth visit with Frantz Muse, M.D. (Muse), Plaintiff stated he had been off psychotropic medications since December 2020 because he had been unable to find a doctor where he was currently living. AR 47. Plaintiff complained of anxiety, difficulty leaving home, and discomfort in social situations. *Id*. Muse observed constricted affect and only fair insight and judgment, but also found Plaintiff to be alert and oriented with appropriate, calm behavior; normal psychomotor activity, speech, and thoughts; and no suicidal or homicidal ideation. *Id*. Muse diagnosed Plaintiff with PTSD and Bipolar I Disorder, and prescribed Paxil 20 mg and Trazodone 50 mg. *Id*.

Finally, the ALJ noted the record included state disability medical consultant opinions, which he found 'largely persuasive" (AR 50), as discussed in detail below.

2. <u>Legal Standard</u>

The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68; *5878-79 (Jan. 18, 2017). Since Plaintiff filed his claim after that date, the new regulations apply. *See*, 20 C.F.R. § 416.920c.

Under the revised regulations, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) …". 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, ALJ's must consider every medical opinion or prior administrative medical findings in the record and evaluate each opinion's persuasiveness using a list of factors listed. *See*, 20 C.F.R. § 404.1520c(a), 416.920c(a). The two most important factors are the opinion's "supportability" and "consistency." *Id*. ALJs must explain "how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [their] . . . decision." 20 C.F.R. §§ 20 C.F.R. 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-2 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)); *see also*, 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent … with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (citing 20 C.F.R. § 404.1520c(c)(2)); *see also*, 20 C.F.R. § 416.920c(c)(2).

3. Analysis of Plaintiff's Medical Evidence Arguments

    a.  Andrew Forsyth, Ph.D. and Steven Haney, Ph.D.

The ALJ acknowledged that the record contained opinions by state disability determination services psychological consultants Andrew Forsyth, Ph.D. (Forsyth) and Steven Haney, M.D. (Haney). AR 51. Forsyth and Haney opined in 2020 that Plaintiff could understand and remember short, simple instructions; could complete simple, repetitive work consistently; could not sustain work with the general public, but could manage superficial dealings with supervisors and a few coworkers; and, required work that did not change frequently. AR 124. 140. The ALJ found these opinions to be "generally persuasive" and "largely persuasive" as they

ORDER AFFIRMING DEFENDANT'S DECISION
DENYING BENEFITS - 14

were adequately supported by the mental health evidence and largely consistent with the remaining evidence of record. AR 51.

Plaintiff insists the ALJ "simply ignored a critical and disabling finding" by Forsyth and Haney—the limitation to "superficial" dealings with supervisors and a few coworkers—which Plaintiff insists would be work-preclusive if properly included in his RFC, because he would be unable to survive any "training period". Dkt. 13 at 6-7; Dkt. 20 at 3.

There is no merit to this argument. As the Commissioner states, "the ALJ is responsible for translating and incorporating clinical findings into a succinct [RFC]." Dkt. 19 at 4 (citing *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also*, 20 CFR 416.920(e) and 416.945; SSR 96-8p. The RFC must take into account all of an individual's limitations. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). An ALJ errs when he provides an incomplete RFC ignoring "significant and probative evidence." *Jones v. Colvin*, 2015 WL 71709, at *5 (W.D. Wash. Jan. 6, 2015) (citing *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012)).

Here, in assessing Plaintiff's RFC the ALJ properly considered all the relevant medical evidence, including the opinion of Plaintiff's primary care provider, Antoci, who clearly considered Plaintiff's mental impairments and determined that PTSD would only impact Plaintiff's functional capacity by causing "moderate" (defined as "significant interference with the ability to perform one or more basic work-related activities") interference with his ability to communicate. AR 588. Consistent with this opinion, the ALJ included in Plaintiff's RFC a limitation to "only occasional interaction with coworkers and no direct communication with the general public". AR 44. The Court finds the ALJ, by including this limitation in the RFC,

adequately addressed the opinions of Forsyth and Haney that Plaintiff could only handle "superficial" dealings with supervisors and a few coworkers.

### b. D. Morgan, Ph.D.

The ALJ discussed the state agency medical opinion of Davie T. Morgan, Ph.D. (Morgan), who opined on November 22, 2019 that Plaintiff had marked limitations in the ability to: perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances without special supervision; learn new tasks; perform routine tasks without special supervision; make simple work-related decisions; ask simple questions or request assistance; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and set realistic goals and plan independently. AR 52, 381-385. In addition, Morgan opined that Plaintiff had no or mild limitations in the ability to understand, remember, and persist in tasks by following very short and simple instructions. *Id*.

The ALJ found Morgan's opinion not persuasive, citing lack of supportability in his one-time evaluation during which Morgan found Plaintiff to be cooperative, well-groomed, appropriately dressed, and exhibiting normal affect, speech, thought content, orientation, perception, abstraction, insight, and judgment. AR 52. The ALJ also found Morgan's opinion to be inconsistent with other objective medical evidence which similarly documented cooperative, engaged, and appropriate behavior; normal alertness and orientation; good grooming and appropriate dress; normal psychomotor activity, speech, and thoughts; normal perception and abstraction within normal limits; and no suicidal or homicidal ideation, even during periods when he was not taking psychotropic medications. *Id*.

According to Plaintiff, the ALJ's rejection of Morgan's opinion is "both unreviewable and also inappropriate" as it "cannot be clearly followed". Dkt. 13 at 10; Dkt. 20 at 4. Plaintiff argues the ALJ's "reasoning is unclear" because although the ALJ rejected Morgan's opined

limitations as unsupported, he also "noted many supportive and abnormal findings" that substantiated Morgan's opinion, suggesting the ALJ "appeared to be attempting to interpret the raw medical evidence into functional terms" in an inappropriate attempt to "play doctor". Dkt. 13 at 9; Dkt. 20 at 4-5.

The Court finds no merit to Plaintiff's contention that the ALJ's findings regarding Morgan are unreviewable or inappropriate. The ALJ sufficiently explained why he found Morgan's opinion lacking supportability and consistency, which the regulations require to discredit a medical opinion. 20 C.F.R. § 416.920c(b)(2). Nor does Morgan's report contain any "raw medical evidence" the ALJ could "play doctor" with. Instead, Morgan's opinion reveals itself to be an almost wholesale-crediting of Plaintiff's subjective reporting with most sentences beginning "[c]lient indicates" or "[c]lient states", and no clear indication Morgan reviewed any objective clinical findings as he simply states "DSHS records" under the section asking what he considered other than his own "psychological evaluation". AR 381-385. Accordingly, the Court finds no error in the ALJ's treatment of Morgan's opinion.

**C. The ALJ did not err regarding his assessment of lay witness evidence.**

Plaintiff contends the ALJ "ignored" a 2019 "function report" completed by Plaintiff's then-girlfriend, Maria Castro (Castro), indicating she had known Plaintiff for seven years during which he exhibited anger problems, mood swings, sleep issues, social-emotional and concentration issues, and physical limitations including back pain. Dkt. 13 at 18-19; AR 246-53.

Defendant asserts that under the revised regulations "ALJs need not always provide written analysis of evidence from nonmedical sources." Dkt. 17, at 2; *see* 20 C.F.R. § 416.920c(d). Subsection (d) of the new regulations states: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.920c(d).

.

The question of how the revised regulations impact an ALJ's obligations with regard to lay witness testimony remains an open question in the Ninth Circuit. At this time, the Court finds §416.920c(d) provides that an ALJ is not required to evaluate non-medical evidence, such as lay-witness statements, using the factors set forth in 20 C.F.R. § 416.920c(a)-(c). However, the new regulations do not unambiguously eliminate the requirement to evaluate lay witness testimony at all. *See Heather P. v. Kijakazi*, 2022 WL 1538654, at *8 (D. Or. May 16, 2022) ("[T]he new regulations do not to do away with the ALJ's obligation to address lay witness testimony altogether. Instead, it only clarifies that the ALJ does not need to use the new standards for evaluating medical opinion evidence when evaluating non-medical source lay testimony.").

Regardless of whether the ALJ erred in failing to discuss the lay witness testimony, any error is harmless. "[A]n ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims.'" *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (quoting *Buckner v. Astrue,* 646 F.3d 549, 560 (8th Cir. 2011)).

Here, Castro's observation that Plaintiff had anger problems, mood swings, sleep issues, social-emotional and concentration issues, and physical limitations including back pain echoed Plaintiff's own subjective symptom testimony. AR 246-53. Because the Court found, above, that the ALJ provided clear and convincing reasons to partially discredit Plaintiff's subjective symptom testimony, including the conservative treatment for his physical conditions and a "limited and sporadic" mental healthcare record, the ALJ's analysis and reasoning for rejecting Plaintiff's testimony "apply with equal force" to Castro's opinion. *Molina*, 674 F.3d at 1122.

1  Accordingly, any error in failing to discuss Castro's opinion is harmless. *See id.* at 1117-22 (finding harmless error where the ALJ failed to discuss testimony from family members when the testimony from the family members did not describe limitations beyond those described by the claimant, whose testimony the ALJ properly discredited); *Johnson v. Kijakazi*, 2022 WL 3998572, at *2 (9th Cir. Sep. 1, 2022) (in a case applying the 2017 regulations, finding harmless error in an ALJ's failure to address lay statements where the lay statements are similar to plaintiff's properly discounted testimony).

### V. CONCLUSION

For the foregoing reasons this matter is AFFIRMED.

Dated this 14th day of March, 2023.

_____
David W. Christel
Chief United States Magistrate Judge